LELAND FIKES v. WILLIAM MOSELEY.

No. 7589. Decided February 19, 1941.
Rehearing Overruled May 28, 1941.
(151 S. W., 2d Series, 202.)

*Vinson, Elkins, Weems & Francis,* of Houston, *McGown, McGown, Godfrey & Logan, B. E. Godfrey,* and *John M. Scott,* all of Fort Worth, *W. C. Hancock* and *Edwin M. Fulton,* of Gilmer, for plaintiff in error.

The defendant in error (plaintiff below) having received by judgment in the trial court all that the written contract provided for, the judgment of that court should be affirmed and

·that of the Court of Civil Appeals, reversing same, should be reversed, in the light of the fact that no express trust arose in favor of plaintiff in any of the minerals conveyed by him; that the written instruments showed upon their face that the title to all the minerals passed to the defendant; that the royalty that might be recovered was not in being at the time of the attempted creation thereof; that the property upon which the trust is attempted to be established is too indefinite and uncertain; that the nature and amount of the interest to be received by plaintiff could not be determined and that it was not shown that plaintiff owned or had any interest in the land, by reason of his deeds to defendant. City of Austin v. Cahill, 99 Texas 172, 88 S. W. (2d) 542; Wheeler v. Haralson, 128 Texas 429, 99 S. W. (2d) 885; Smith v. Schlitter, 66 S. W. (2d) 353.

*Frank Bolton,* of Henderson, and *Austin C. Anderson,* of Fort Worth, for defendant in error.

The instrument of conveyance of plaintiff to defendant passed only the legal title and the equitable title remained in plaintiff until defendant had executed all the conditions upon which the conveyance was based. Hollister v. McCamey, 115 Texas 49, 274 S. W. 562; Texas & Pac. Ry. Co. v. Martin, 123 Texas 383, 71 S. W. (2d) 867; Leakey v. Gunter, 25 Texas 400.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

On April 6, 1931, William Moseley and Young Moseley executed and delivered to Leland Fikes an instrument which on its face purports to convey all of grantors' undivided right, title and interest in and to all oil, gas and other minerals in and under two specifically described tracts of land in Gregg County; one containing 70 acres more or less and the other 87 acres more or less. These tracts were further described as the Mose Turner tracts in a certain survey in which grantors had acquired interests by heirship through Mattie Moseley, daughter of Mose Turner. Contemporaneously with the delivery of this conveyance Fikes executed and delivered to William and Young Moseley the following instrument:

"Fort Worth, Texas, April 6, 1931.
"Mr. William Moseley
"Mr. Young Moseley, 313 East 9th Street,
    Fort Worth, Texas
"Dear Sirs: In connection with the agreement and mineral deed you have today signed, I further agree to pay all the neces-

sary expense, lawyer's fees, court costs, and other necessary incidentals to defend title to your interest in your mother's estate insofar as your interest is affected in what is known as the Mose Turner 70 acre tract and the 87 acre tract in the W. C. Wakeland HRS, Gregg County, Texas, and to assign and deliver free of cost to you one-half of any royalty which I may recover under your claim of title.

"The specific intent therein being to convey to me a regular 88 form lease for a ten year period and one-half of the royalty and to keep for yourself the land and one-half of the royalty, as, if and when title may be freed from other claims at my expense.

"Yours truly
"(Signed) Leland Fikes."

It is appropriate to say here that Young Moseley has passed out of this case and only the rights of William Moseley are involved.

Shortly after the execution of the above mentioned instrument Fikes acquired conveyances from other parties, purporting to be the remaining heirs of Mattie Moseley, conveying all of their right, title and interest in said tracts of land. On August 6, 1931, Fikes conveyed to one Cad McCall all of his undivided interest in the oil, gas and minerals in the two tracts of land mentioned, and in this instrument recited that his undivided interest was not less than 14 full royalty acres in the 70 acre tract and not less than 17 full royalty acres in the 87 acre tract. It is admitted that this purported conveyance to McCall was wholly for the convenience of Fikes, and McCall is to be regarded as representing Fikes in the ownership of his interest in the oil, gas and minerals.

Mose Turner, the source of title, died in 1910. There was born to him fourteen children in all, but the evidence is wholly uncertain as to how many survived him. The proof indicates that perhaps as many as eleven so survived. One of these children was Mattie Moseley, the mother of William Moseley, and it appears certain that she left six children as her heirs. It is apparent from the testimony that much confusion existed as to the condition of the title, as well as the respective interests of those purporting to be heirs of Mose Turner. Sometime prior to October 26, 1932, suit was instituted in the District Court of Gregg County to clear the title and to determine the respective interests of contesting claimants. There were about eighty parties to this suit. Cad McCall, the representative of Leland Fikes, was a defendant. On said 26th day of October,

1932, judgment was entered in said cause. It is designated by attorneys for plaintiff as an agreed judgment, but it does not appear to be such upon its face. Prior to the entry of this judgment oil, gas and mineral lease in the usual form had been executed by McCall, representing Fikes, to J. K. Wadley, and in turn Wadley had conveyed a 1/2 interest in this lease to Atlantic Oil Producing Company. By the decree mentioned the 7/8th working interest in these two tracts of land was vested in Wadley and Atlantic Oil Producing Company, and the royalty interest was apportioned to thirty-six different individuals. In this decree 8.70 royalty acres was awarded to Fikes in the name of Cad McCall.

■ The present suit was instituted in the District Court of Tarrant County, Texas, by William Moseley against Leland Fikes, and the parties will be designated as in the trial court. As presented on appeal, plaintiff appears to have based his right of recovery on the theory of breach of trust. His contention seems to be that the conveyance by him to defendant of April 6, 1931, together with the instrument executed by defendant on the same date, are to be construed as a conveyance by him to defendant of the minerals solely for the purpose of clothing defendant with the apparent legal title, so that he might clear title to same, whereupon defendant was to reconvey to plaintiff one half of the oil and gas royalty; that such conveyance vested title in defendant solely in trust; that the failure of defendant to reconvey the one-half royalty constituted a breach of trust; and that as defendant had, by virtue of being invested with the legal title, placed the minerals beyond the reach of plaintiff, defendant was liable in damages and for the full value of all the minerals. Plaintiff in the trial court set up a parol agreement in addition to the written instruments, to which special exceptions were sustained, and rightly so we think. So as to both plaintiff and defendant the case here is, in our judgment, governed entirely by construction of the two written instruments.

It is not necessary to set out in detail defendant's construction of these instruments, but in brief he contends that at the most plaintiff was not entitled at any time to anything more than the value of one half of the royalty, which defendant has offered to pay.

The case was tried before a jury and certain special issues were answered. They are no longer of any consequence in deciding the case, as they were adverse to defendant and he has not appealed. The trial court found that plaintiff was en-

titled to recover the present market value of 1/6 of 1/2 of 8.70 acres royalty interest, which was of the value of $1395.00. Judgment was rendered for that amount with six per cent. interest. Plaintiff appealed from such judgment, and the Court of Civil Appeals reversed and remanded the case. 126 S. W. (2d) 589. The Court of Civil Appeals elaborately discussed several questions which, under our construction of the contract, become wholly immaterial.

■ All parties agree that the conveyance and the contemporaneous letter must be treated as one instrument, and effect must be given to both, as between the parties, just as if the letter had been written into the conveyance. Thus construed, as between the parties, we think the meaning is manifest. The purported conveyance was exactly the same as an oil, gas and mineral lease executed on the regular 88 form by plaintiff as lessor and defendant as lessee, the primary term to be ten years, the lease to continue as long thereafter as oil, gas or minerals were produced; the lessor to receive one half of the contemplated royalty, and defendant to receive the other one half as a consideration for his expenses and services in clearing the title. It may be inferred, we think, that the parties contracted on the basis of the usual 1/8th royalty. When defendant through McCall executed lease it did contain such a royalty. The defendant would under a regular 88 form lease take exactly the same interest in the oil, gas and minerals as he took under the mineral deed in question, subject of course to the payment of .stipulated royalty and the conditions with reference to operations and termination of lease.

We think it further apparent that as between the parties no further conveyance was contemplated. Referring directly to the mineral conveyance the language in the letter is as follows: "The specific intent *therein* being to convey to me a regular 88 form lease." We think the language with reference to royalty confirms this conclusion. Defendant in that regard obligated himself to "assign and *deliver free of cost* to you one half of any royalty I may recover under your claim of title." We think this clearly contemplated the delivery of royalty after it was produced from all such land as defendant should clear the title to, and this should continue for such time as royalty should be realized.

It is our conclusion that, as between the parties, the situation is exactly the same as if a lease on the regular 88 form had been executed by plaintiff to defendant, with reservation of a 1/16th royalty, which lease in turn had been assigned by

defendant to Wadley and the Atlantic Oil Producing Company. In addition there was the obligation to clear the title at the expense of defendant.

■ Complaint is made, however, that defendant breached his trust in joining in the agreed judgment, on the theory that plaintiff was entitled to a larger interest than defendant recovered for him in that suit. The agreement clearly contemplated that defendant would clear the title by court proceedings, pay attorney's fees, costs of court, etc. We have no doubt that this gave him authority to make a compromise or settlement, if necessary, fixing plaintiff's interest, so long as he did not commit a fraud upon plaintiff in doing so. The evidence we think shows beyond all doubt that defendant dealt fairly with plaintiff in adjusting his rights. There was undoubtedly much confusion as to heirship as well as to the relative rights of different parties. This is evident from the number of parties to the suit, which included unknown heirs to Mose Turner. There was also conflict in claims, as some of the parties were in possession and asserting rights by virtue of such possession. In addition to this there was of record a deed purporting to have been executed by Mattie Moseley, the mother of plaintiff, joined by her husband, dated February 8, 1924, conveying all of her interest in the 70 acre tract. This instrument appears to have been duly acknowledged before the County Judge of Upshur County, Texas, and was filed for record April 2, 1931. Plaintiff in the present suit filed an affidavit of forgery attacking this deed, but there is no evidence that such an affidavit was filed in the prior suit. Plaintiff complains of the admission of this deed in evidence in the present case, but we do not think it necessary to determine whether or not it was admissible. Certainly defendant had a right to rely upon its validity in adjusting the rights of plaintiff in the prior suit. In this case we find no evidence showing with any degree of certainty just what the true interest of plaintiff was at the time of entry of the judgment on October 26, 1932. We therefore conclude that as no fraud on the part of defendant was shown in fixing the rights of plaintiff in the former suit, and as the evidence strongly indicates that he then recovered the full interest he was entitled to receive, the finding of the trial court awarding plaintiff a royalty interest in 8.70 acres was correct, and is binding on plaintiff.

Damages were awarded plaintiff on the basis of the present cash market value of his royalty interest. As indicated above, it is our opinion that he is entitled to recover of defendant the value of one half of the royalty accruing on his interest in the

8.70 acres under the lease by defendant, so long as same may accrue, as well as the value of what is known as the possibility of reverter. Manifestly, as between the parties, if the instrument be treated as a regular 88 form lease only a defeasible fee title in the minerals passed to defendant. However, as to purchasers or lessees without notice of the contemporaneous letter, title to the oil, gas and minerals may have passed, and in that event plaintiff is entitled to compensation from defendant for the value, if any, which may be attached to the oil, gas and minerals, if, as and when production may cease.

The judgment of the Court of Civil Appeals remanding the case is affirmed, and in the event of another trial the Court will be governed by this opinion.

Opinion adopted by the Supreme Court February 19, 1941.

Rehearing overruled May 28, 1941.