

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

No. 07-18-00354-CV

___

SHAWN BROOKS, APPELLANT

V.

AUROS PARTNERS, INC., APPELLEE

___

On Appeal from the 352nd District Court
Tarrant County, Texas[1]
Trial Court No. 352-290635-17, Honorable Josh Burgess, Presiding

___

April 22, 2020

## MEMORANDUM OPINION

### Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant Shawn Brooks, appearing pro se, challenges an adverse judgment rendered by the trial court in favor of Appellee Auros Partners, Inc. Based on the following analysis of Brooks's five issues, we affirm the judgment of the trial court.

___

[1] Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

## Background

Beginning in 2012, Brooks had contact with investor Ramiro Pericon concerning a repair system for asphalt roofs which Brooks claimed to have invented and patented. By 2016, Pericon's investment partners -- Lance Lang, Daniel Lam, and Runhe "James" Zhen -- were sufficiently interested in Brooks's roofing repair system that they formed Auros to work with Brooks in a roofing repair business.

Brooks formed the entity, Shingle Restore, Inc., to implement and market the roofing repair system. The initial directors of Shingle Restore were Brooks, Pericon, Lang, and Lam. The parties agreed that Auros would receive fifty-six percent of the outstanding stock in Shingle Restore in consideration for $950,000 capital funding. Brooks would receive forty-four percent of the stock in consideration for Shingle Restore having the exclusive right and control to market the patented shingle restoration product.

According to Auros, "[a]s soon as [Shingle Restore] was created and Auros tendered its initial capital funding . . . Auros began realizing that Brooks misrepresented his capabilities and the effectiveness of his Shingle Restore product." Auros ceased providing capitalization funding of Shingle Restore and the directors removed Brooks as president-secretary of Shingle Restore. At the time Auros ceased capital funding, it had paid some $728,000 into the company.

Brooks filed suit against Auros, Pericon, Lang, Lam, Zhen, and Shingle Restore. Auros filed counterclaims against Brooks, seeking damages for common law fraud, fraud by non-disclosure, statutory fraud, and negligent misrepresentation. Over the course of the litigation, Brooks's claims against Auros, the individual defendants, and Shingle

2

Restore were disposed against him by partial summary judgment or grant of a motion to dismiss under Texas Rule of Civil Proceedure 91a. *See* TEX. R. CIV. P. 91a. In its final judgment, the trial court awarded to Auros, among other things: (1) $528,000 actual damages for its four theories of affirmative relief; (2) $300,000 for exemplary damages based on the four theories of affirmative relief; and, (3) $303,339.50 for attorney's fees through trial. Conditional awards of appellate attorney's fees were also made. The trial court found Brooks purchased a house with funds acquired by actual fraud and accordingly impressed the property with a constructive trust in favor of Auros.

Brooks filed a motion for new trial which was overruled by operation of law. This appeal followed.

## Analysis

### First Issue

In Brooks's first issue, he contends that Auros was not entitled to recover summary judgment or damages for fraud, statutory fraud, and negligent misrepresentation claims because Brooks and Auros did not have a signed, written agreement conforming to the statute of frauds. *See* TEX. BUS. & COMM CODE ANN. § 26.01(a) (West 2015).[2] Brooks argues a signed writing was required because the parties' agreement concerned "a promise by one person to answer for the debt, default, or miscarriage of another person," was "an agreement which is not to be performed within one year from the date of making

---

[2] Brooks also suggests his transactions with Auros constitute the sale of a security. He provides no support for his position and directs the Court to no authority supporting the conclusion that Auros's claims of fraud and misrepresentation depend on a written contract for sale of a security. Accordingly, to the extent Brooks intends for this reference to constitute a basis for reversal, it is waived due to inadequate briefing. TEX. R. APP. P. 38.1(i).

the agreement," and was "a contract for the sale of real estate." *See* TEX. BUS. & COMM CODE ANN. § 26.01(b)(2),(4),(6).

Without analysis, Brooks directs us to *Haase v. Glazner,* 62 S.W.3d 795, 798 (Tex. 2001). Concerning fraud in the inducement, the court in *Haase* stated, "[w]ithout a binding agreement, there is no detrimental reliance, and thus no fraudulent inducement claim. That is, when a party has not incurred a contractual obligation, it has not been induced to do anything." While "the Statute of Frauds," the court held, "bars a fraud claim to the extent the plaintiff seeks to recover as damages the benefit of a bargain that cannot otherwise be enforced because it fails to comply with the Statute of Frauds" a plaintiff's claim for out-of-pocket damages stemming from reliance on alleged misrepresentations may nevertheless be pursued. *Haase,* 62 S.W.3d at 799-800.

The statute of frauds is an affirmative defense that Brooks did not urge in the trial court. Brooks may not raise the statute of frauds as an affirmative defense for the first time on appeal. *See Praeger v. Wilson,* 721 S.W.2d 597, 602 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.) (stating "[a] statute of frauds defense must be affirmatively pleaded or it is waived."). Moreover, the judgment recites that Auros was awarded actual damages for its out-of-pocket loss, not the benefit of its bargain.

In a sub-issue, Brooks asserts Auros "perjured themselves" and had unclean hands. No discussion is supported by any citation to the record or authority. An appellate court is not obligated to review the record, research the law, and fashion a legal argument for an appellant who has not done so. *Guajardo v. Hitt,* 562 S.W.3d 768, 781 (Tex. App.— Houston [14th Dist.] 2018, pet. denied) (citing *Canton-Carter v. Baylor Coll. of Med.,* 271

4

S.W.3d 928, 931-32 (Tex. App.—Houston [14th Dist.] 2008, no pet.)). This is true even though the appellant appears pro se. *See Baish v. Allen,* No. 02-17-00146-CV, 2019 Tex. App. LEXIS 2229, at *2 (Tex. App.—Fort Worth Mar. 21, 2019, no pet.) (mem. op.) ("Pro se litigants are held to the same standards as licensed attorneys and must comply with applicable laws and procedural rules."). Waiver for inadequate briefing occurs when a party fails to sufficiently cite to the record and authority or provide any substantive legal analysis. *See* TEX. R. APP. 38.1(i); *Lowry v. Tarbox,* 537 S.W.3d 599, 611-12 (Tex. App.—San Antonio 2017, pet. denied) (finding appellants waived their sufficiency argument because their brief on the issue provided no argument or analysis supporting their contention and thus afforded the appellate court no basis to analyze and determine the issue). We find Brooks's "perjury" and unclean hands sub-issue is inadequately briefed and therefore waived. Brooks's first issue is overruled.

Second Issue

By his second issue, Brooks argues the trial court's imposition of a constructive trust against his home was in error. First, he argues Auros "did not prove any evidence to the courts for any Real estate contract for Statutory Fraud." Auros counters that Brooks has confused its cause of action for statutory fraud with constructive trust because its statutory fraud claim was not based on a real estate contract but on an agreement related to stock in a corporation. Regardless, the judgment imposes a constructive trust because of the court's finding in the judgment that the house was purchased with funds Brooks fraudulently obtained. Aside from the waived statute of frauds argument, Brooks does not challenge on appeal the sufficiency of evidence proving Auros's common law fraud claim.

5

Brooks next states his wages were paid by Shingle Restore and not Auros but provides no analysis or authority for the significance of the proposition. Otherwise, he does not challenge the sufficiency of evidence tracing fraudulent receipts into the house.

Finally, Brooks argues the trial court erred because his house was conveyed to a revocable living trust of which his wife, Connie Brooks, is trustee; yet, she was not made a party to the lawsuit and is not mentioned in the judgment. In impressing the property with a constructive trust, the trial court stated in the judgment that the house was "*purportedly* owned by the 'Brooks Shawn & Connie Revocable Living Trust.'" (emphasis supplied). Even if Brooks presented his defect-of-parties issue to the trial court, the record does not contain the trust instrument, nor does it include a deed evidencing the conveyance of the property to a trust. Furthermore, the property became subject to the constructive trust the moment Brooks unlawfully acquired it. *Fitz-Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256, 264 (1951); *SEC v. Ramirez,* No. 7:13-CV-531, 2016 U.S. Dist. LEXIS 178332, at *8 (S.D. Tex. 2016) (ordering under Texas law constructive trust attached to assets the moment legal title was transferred). Brooks's spouse does not possess different interests in Brooks's fraudulently-obtained funds, or property purchased therefrom, than Brooks does.

Illustrative is *First State Bank v. Zelesky,* 262 S.W. 190 (Tex. Civ. App.—Galveston 1924, no writ). There, the husband embezzled funds from his employer and used them to purchase property he declared to be homestead. The wife was unaware of her husband's wrongdoing. The court of civil appeals explained the husband held the property for the benefit of the bank as its constructive trustee. As such, "[a] wife can never acquire homestead rights in property held in trust by her husband which defeat or impair

the rights of the beneficiary of the trust." 262 S.W. at 192; *Byrom v. Penn,* No. 12-15-00033-CV, 2016 Tex. App. LEXIS 9209, at *6 (Tex. App.—Tyler Aug. 24, 2016, pet. denied) (mem. op.); *cf. Smith v. Green,* 243 S.W. 1006, 1008 (Tex. Civ. App.—Amarillo 1922, writ ref'd)[3] ("Under the doctrine of constructive trusts a court of equity follows the trust property through its mutations into its changed form, declares that this new form of property is the trust property, in whole or in part as the circumstances may be, and restores it to its rightful owner").  Once Appellees traced the funds to the purchase of the property, the burden of proof shifted to proving that the trust's alleged ownership interests originated in funds that were not fraudulently obtained.  *See Marineau v. Gen. Am. Life Ins. Co.,* 898 S.W.2d 397, 400 (Tex. App.—Fort Worth 1995, writ denied); *Meyers v. Baylor Univ.*, 6 S.W.2d 393, 395 (Tex. Civ. App.—Dallas 1928, writ ref'd).  There is no evidence in the record that any of the home's property was purchased with funds other than those the trial court found to be fraudulently obtained.  Brooks's second issue is overruled.

Third Issue

By his third issue Brooks argues the trial court erred by signing the final judgment without first conducting a hearing.  We do not find this complaint was presented to the trial court and an adverse ruling obtained.  Accordingly, it is waived.  TEX. R. APP. P. 33.1(a).

---

[3] In *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 754 n.52 (Tex. 2006), the Supreme Court of Texas held that its notation of "writ refused" in cases after 1927 that the judgment of the court of civil appeals is correct, with "[s]uch cases hav[ing] equal precedential value with the Texas Supreme Court's own opinions."

Moreover, we find no merit to the various reasons Brooks presents on appeal, without citation, supporting his complaint. As an example, Brooks points to Rule of Civil Procedure 167 to claim that the trial court erred in failing to conduct a hearing. But this rule concerns the procedure for shifting litigation costs following a rejected settlement offer. In particular, the rule provides, "If a settlement offer made under this rule is rejected, and the judgment to be awarded on the monetary claims covered by the offer is significantly less favorable to the offeree than was the offer, the court must award the offeror litigation costs against the offeree from the time the offer was rejected to the time of judgment." TEX. R. CIV. P. 167.4(a). Because this case does not involve a rejected settlement offer, there was no reason for the trial court to conduct a hearing under Rule 167.5(c).

Brooks next presents several short retorts concerning the amount of revenue he received from Shingle Restore, the percentages of ownership in Shingle Restore, and the amount of payments from Auros to Shingle Restore. Based on these statements, Brooks summarily concludes Auros actually owes him $232,760. There is no indication that Brooks objected to the procedure the trial court followed for awarding damages. Finally, nothing in Brooks's argument indicates because the trial court rendered a written judgment without first conducting a hearing an improper judgment was probably rendered or Brooks is probably prevented from properly presenting his case on appeal. TEX. R. APP. P. 44.1(a). Even had error occurred and been preserved, harmful error does not appear in the record. Brooks's third issue is overruled.

8

Fourth Issue

Brooks next argues the trial court erred by awarding attorney's fees and excessive actual and punitive damages because Rule 169(b) caps a prevailing party's recovery at $100,000. *See* TEX. R. CIV. P. 169(b). The expedited actions process created by Rule 169 "applies to a suit in which all claimants, other than counter-claimants, affirmatively plead that they seek only monetary relief aggregating $100,000 or less, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees." TEX. R. CIV. P. 169(a)(1). A party who prosecutes a suit under Rule 169 may not recover judgment in excess of $100,000, excluding post-judgment interest. TEX. R. CIV. P. 169(b).

In the present case, no party seeking relief affirmatively pled the damage limitation of Rule 169(a)(1). For example, in his live petition Brooks alleged, "[p]ursuant to Rule 47(c) of the Texas Rules of Civil Procedure, Plaintiff hereby gives notice to Defendants that the maximum amount Plaintiff seeks is twenty-five million dollars ($25,000,000)." This was not a suit brought under Rule 169; hence, the damage cap of that rule's subpart (b) has no application. Brooks's fourth issue is overruled.

Fifth Issue

By his fifth issue, Brooks argues the trial court erred in granting summary judgment because the "directors of Auros . . . have unclean hands during litigation; committed perjury, spoilage of evidence, abuse of the justice system to try and [steal] my intellectual

9

property,[4] investor fraud." As for whether Brooks's claims of unclean hands, perjury, spoliation of evidence, and "abuse of the justice system," if properly pled and presented to the trial court, might have had viability we do not say. Brooks failed to raise these defensive theories in the trial court and they may therefore not be asserted for the first time on appeal as grounds for reversal. *See* TEX. R. CIV. P. 94*; Watson v. Tipton,* 274 S.W.3d 791, 800-01 (Tex. App.—Fort Worth 2008, pet. denied) (holding that an affirmative defense not pled at the trial court level cannot be raised for the first time on appeal) (citing *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979) (holding that nonmovant may raise sufficiency of the evidence for the first time on appeal but any other grounds for reversal must have been raised in the trial court)).

To the extent that Brooks attempts to invoke allegations of fraud against the Appellees, his argument likewise fails. Brooks alleged in his fourth amended original petition that Lang, Pericon, Lam, and Zhen defrauded him, and not Shingle Restore, by transferring Shingle Restore funds, transferring corporate property, "diverting" corporate funds, and using corporate funds for their personal expense. On October 23, 2017, the trial court signed an "amended order" that in part granted Auros, Lang, Pericon, Lam, and Zhen's Rule 91a motion to dismiss Brooks's claims of breach of fiduciary duty and fraud.

A court of appeals reviews a ruling under Rule 91a "de novo because the availability of a remedy under the facts alleged is a question of law and the rule's factual plausibility standard is akin to a legal-sufficiency review." *City of Dallas v. Sanchez,* 494 S.W.3d 722, 724 (Tex. 2016) (per curiam). Rule 91a provides a procedure for dismissal

---

[4] Brooks directs this accusation against Auros's attorneys for questions asked Brooks during his deposition.

of a case that has no basis in law or fact. TEX. R. CIV. P. 91a. A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. TEX. R. CIV. P. 91a.1. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded. TEX. R. CIV. P. 91a.1.

"A cause of action against one who has injured a corporation belongs to the corporation and not to the shareholders." *Swank v. Cunningham*, 258 S.W.3d 647, 661 (Tex. App.—Eastland 2008, pet. denied). Thus a shareholder seeking redress for wrongs done to the corporation must bring suit derivatively in the name of the corporation. *Id.* "Without breach of a legal right belonging to the plaintiff no cause of action can accrue to his benefit." *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976); *cf. Cadle Co. v. Lobingier*, 50 S.W.3d 662, 666, 669-70 (Tex. App.—Fort Worth 2001, pet. denied) (en banc) (finding in case where judgment debtors were held in contempt for failing to comply with turnover orders judgment creditor had no standing to seek recovery of contempt fine from judgment debtors); *Brunson v. Woolsey*, 63 S.W.3d 583, 587-90 (Tex. App.—Fort Worth 2001, no pet.) (finding landowners had no standing to seek revision of the plat of their lot when the Legislature granted that right only to the original developer).

Brooks did not allege the individual defendants breached a tort duty owed directly to him. *Swank,* 258 S.W.3d at 661. Rather, he sought to recover damages individually on a cause of action that belonged to Shingle Restore.[5] Under Texas law, Brooks lacked standing to individually seek such relief. *See id.,* 258 S.W.3d at 662 (finding "[b]ecause

---

[5] Nor does Brooks complain that the trial court reversibly erred by implicitly refusing to allow him to recover the corporation's damages directly. *See Guajardo,* 562 S.W.3d at 780-81, 780 n.6.

[appellants'] claims depend on an injury to [the corporation], their claims are derivative in nature" and they therefore "lack standing to seek redress in their individual capacities"). Accordingly, Brooks's fraud claim against the individual defendants had no basis in law and was correctly dismissed under Rule 91a.  Brooks's fifth issue is overruled.

## Conclusion

Having overruled each of Brooks's appellate issues, we affirm the judgment of the trial court.


Lawrence M. Doss
Justice